UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRAIG K. GARRETT, CDCR #K-95956,<br><br>                           Plaintiff,<br><br>      vs.<br><br>RALPH DIAZ; DANIEL PARAMO; PATRICK COVELLO; SIGALA; DURAN; SALAS; BUENROSTRO; LARIOS; OROZCO,<br><br>                           Defendants. | Case No.: 3:19-cv-0510-CAB-MSB<br><br>**ORDER:**<br><br>**1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS [Doc. No. 2];**<br><br>**2) DENYING MOTION FOR APPOINTMENT OF COUNSEL [Doc. No. 3]; and**<br><br>**3) SUA SPONTE DISMISSING COMPLAINT PURSUANT TO 28 U.S.C. § 1915(e)(2)(B)(ii) AND § 1915A(b)(1)** |

      Craig K. Garrett ("Plaintiff"), incarcerated at Salinas Valley State Prison ("SVSP") located in Soledad, California, is proceeding pro se in this case with a civil rights Complaint ("Compl.") filed pursuant to 42 U.S.C. § 1983 (Doc. No. 1). Plaintiff has not prepaid the $400 civil filing fee required by 28 U.S.C. § 1914(a); instead, he has filed a Motion to Proceed In Forma Pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a) (Doc. No. 2), along with a Motion to Appoint Counsel (Doc. No. 3).

1

## I. Motion to Proceed IFP

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $400.[1] *See* 28 U.S.C. § 1914(a). The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999). However, a prisoner granted leave to proceed IFP remains obligated to pay the entire fee in "increments" or "installments," *Bruce v. Samuels*, __ U.S. __, 136 S. Ct. 627, 629 (2016); *Williams v. Paramo*, 775 F.3d 1182, 1185 (9th Cir. 2015), and regardless of whether his action is ultimately dismissed. *See* 28 U.S.C. § 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Section 1915(a)(2) requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for ... the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. § 1915(b)(1); 28 U.S.C. § 1915(b)(4). The institution having custody of the prisoner then collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which his account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2); *Bruce*, 136 S. Ct. at 629.

---

[1] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $50. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. June 1, 2016). The additional $50 administrative fee does not apply to persons granted leave to proceed IFP. *Id.*

In support of his Motion to Proceed IFP, Plaintiff has submitted a copy of his CDCR Inmate Statement Report, together with a prison certificate completed by an accounting official at SVSP attesting to his trust account activity (Doc. No. 2 at 3-6). *See also* 28 U.S.C. § 1915(a)(2); S.D. CAL. CIVLR 3.2; *Andrews*, 398 F.3d at 1119. These statements show that Plaintiff had no available balance at the time of filing (Doc. No. 3 at 1.) Based on this accounting, no initial partial filing fee is assessed. *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."); *Bruce*, 136 S. Ct. at 630; *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay ... due to the lack of funds available to him when payment is ordered.").

Therefore, the Court GRANTS Plaintiff's Motion to Proceed IFP (Doc. No. 2), declines to exact any initial filing fee because his prison certificate indicates he has "no means to pay it," *Bruce*, 136 S. Ct. at 629, and directs the Acting Secretary of the California Department of Corrections and Rehabilitation ("CDCR"), or his designee, to instead collect the entire $350 balance of the filing fees required by 28 U.S.C. § 1914 and forward them to the Clerk of the Court pursuant to the installment payment provisions set forth in 28 U.S.C. § 1915(b)(1). *See id.*

**II.     Motion to Appoint Counsel**

Plaintiff claims that the "appointment of counsel in this matter is important due to the complexity that this litigation involves." (Doc. No. 3 at 3.) In addition, he claims he "lacks the legal expertise and resources to effectively argue this matter which needs a full judicial review." *Id.* at 4.

/ / /

/ / /

/ / /

/ / /

All documents filed pro se are liberally construed, and "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (internal quotations omitted)). But there is no constitutional right to counsel in a civil case; and none of Plaintiff's pleadings to date demand that the Court exercise its limited discretion to request than an attorney represent him pro bono pursuant to 28 U.S.C. § 1915(e)(1) at this stage of the case. *See Lassiter v. Dept. of Social Servs.*, 452 U.S. 18, 25 (1981); *Agyeman v. Corr. Corp. of America*, 390 F.3d 1101, 1103 (9th Cir. 2004). Only "exceptional circumstances" support such a discretionary appointment. *Terrell v. Brewer*, 935 F.3d 1015, 1017 (9th Cir. 1991); *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009). Exceptional circumstances exist where there is cumulative showing of both a likelihood of success on the merits and a demonstrated inability of the pro se litigant to articulate his claims in light of their legal complexity. *Id.*

As currently pleaded, Plaintiff's Complaint demonstrates that while he may not be formally trained in law, he nevertheless is fully capable of legibly articulating the facts and circumstances relevant to his claims, which are typical and not legally "complex." *Agyeman*, 390 F.3d at 1103. Moreover, for the reasons discussed below, Plaintiff has yet to show he is likely to succeed on the merits of the claims he alleges in this matter. *Id.* Therefore, the Court **DENIES** Plaintiff's Motion for Appointment of Counsel (Doc. No. 3).

**III.  Screening Pursuant to 28 U.S.C. § 1915(e)(2)(B) & 1915A**

    A.  <u>Standard of Review</u>

Because Plaintiff is a prisoner and is proceeding IFP, his Complaint requires a pre-answer screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). Under these statutes, the Court must sua sponte dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc)

(discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 681 (7th Cir. 2012)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

B. <u>42 U.S.C. § 1983</u>

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Naffe v. Frye*, 789 F.3d 1030, 1035-36 (9th Cir. 2015).

C.   Factual Allegations

Plaintiff was previously incarcerated at the Richard J. Donovan Correctional Facility ("RJD") in 2018. *See* Compl. at 1. On June 7, 2018, Plaintiff alleges he was "assaulted with a weapon by a prisoner who was paid in 'tobacco'." *Id*. at 4. Plaintiff alleges that prior to this assault he has been subjected to a "campaign of harassment" at both the California Men's Colony ("CMC") and RJD. *Id*. Plaintiff has filed "numerous complaints" regarding these claims of harassment which he alleges has resulted in retaliatory actions. *Id.*

Plaintiff claims that prison officials at both CMC and RJD will issue "bogus rules violation reports" to "retaliate against a prisoner" who has made "complaints concerning racism and/or the lack of processing of complaint forms." *Id*. Plaintiff claims these "bogus" rules violations were used to "bolster custodial points to facilitate 'adverse' transfers to harsher facilities." *Id.*

Plaintiff states it is his "opinion that the Secretary of Corrections 'hands off' policy allows for individual prison facilities to effectively retaliate against prisoners for filing complaints." *Id*. Plaintiff "accuse[s] Ralph Diaz, Secretary of Corrections, of fostering rampant due process violations and incidences of cruel and unusual punishment due to reprisal." *Id.* at 4-5. Plaintiff claims that his complaints of "unfair hiring practices" by the CDCR has caused him to suffer a "campaign of harassment" by "Hispanic (majority) prison staff." *Id.* at 5.

Plaintiff alleges that "prior to the June 7, 2018 assault" he had "personally confronted Warden Paramo" to tell him "verbally" that he was "experiencing harassment from prison guards." *Id.* Plaintiff alleges this harassment occurred because "prison guards" became "aware of a 51 day hunger strike I conducted in 2006" which ultimately resulted in the former Warden "being investigated for numerous misconducts." *Id.* Plaintiff claims Warden Paramo "assured [Plaintiff] he would 'investigate'" his complaints. *Id.*

///

6

However, Plaintiff "continued to experience 'harassment' by RJD staff." *Id.* at 6. Plaintiff alleges this harassment was in the form of "withholding of quarterly packages, mail, and the confiscation of personal property." *Id.* From April 9, 2018 to August 20, 2018, Plaintiff notified Warden Paramo of the "reprisal and retaliation," he claims he experienced by "RJD employees." *Id.* However, Plaintiff alleges Warden Paramo "did not take any action to curb this harassment which quickly lead to a violent assault" against Plaintiff. *Id.*

Plaintiff claims Chief Deputy Warden Covello "facilitated an assault" on Plaintiff by Correctional Officers "Salas, Duran, and Sigala by disregarding [Plaintiff's] safety issues against RJD staff." *Id.* Plaintiff claims these prison officials "forc[ed]" him out of "Administrative Segregation" ("ad-seg") and into the "C Facility." *Id.* Plaintiff alleges Salas, Duran, and Sigala "verbally and physically assaulted" him when they "forcibly" placed him "into a cell in Unit 15." *Id.*

Plaintiff alleges that he was "taken from ad-seg" on June 19, 2018 and sent to "Sharp Hospital" due to a "hunger strike" he "commenced relating to RJD's refusal to investigate [his] claims." *Id.* at 7. When Plaintiff was examined at the hospital he was found to have a "heart condition" that was "exacerbated by the hunger strike." *Id.* On June 20, 2018, Plaintiff was "transferred to Tri-City Hospital and placed on a heart monitor." *Id.*

While Plaintiff was being treated at Tri-City Hospital he was "visited by someone (name/title unknown) who wanted to know the reason" for his hunger strike. *Id.* Plaintiff informed this person of the "stabbing and RJD's refusal to investigate these matters." *Id.* Plaintiff was "assured" that if he stopped his hunger strike this unknown person "would make sure the 602 complaint [Plaintiff] submitted on June 8, 2018 would be processed." *Id.* Plaintiff "concluded the hunger strike and several days later" he was "released from the hospital and taken back to ad-seg." *Id.*

On August 4, 2018, Plaintiff claims he was "coerced by Ad-Seg Lieutenant and Sergeant to exit the Ad-Seg cell" for a "psychiatric transfer." *Id.* The "authorization to

7

remove Plaintiff from Ad-Seg without a prior Captain's review came from Defendant Covello." *Id.* at 8. Plaintiff alleges this "arbitrary removal lead to the orchestrated assault" on him by Duran, Sigala, and Salas. *Id.*

Plaintiff contends Duran, Sigala, and Salas "assaulted" him in the "sally port structure in Building 15." *Id.* Plaintiff submitted an administrative grievance regarding this assault on September 1, 2018. *See id.* However, Plaintiff alleges that the "RJD Appeals Office is refusing to process this appeal from the first level" of review. *Id.* Plaintiff claims that they are "routinely issuing Plaintiff a 'memorandum' on a monthly basis citing that the appeal is being delayed due to the 'complexity of the decision, action, or policy." *Id.* Plaintiff claims that Defendants are "deliberately" delaying him "from exhaustion" of his administrative remedies. *Id.*

On June 7, 2018, the day Plaintiff alleges he was assaulted by another inmate, he claims Defendant Buenrostro was "assigned as the Control Officer for Building One." *Id.* at 11. He further claims Buenrostro "witnessed the blood stain" on Plaintiff's shirt and "the weapon in prisoner Ellis' hand" but did not "activate his panic button or attempt to de-weaponize Ellis." *Id.* Plaintiff alleges Defendants Larios and Orozco also "witness[ed] prisoner Ellis with a weapon in his hand and blood" on Plaintiff's shirt from "approximately five (5) feet away but did not activate their panic buttons" or take any action "to prevent further injury." *Id.* Plaintiff claims he was in a "standoff" with the inmate who purportedly stabbed him "for 10 minutes before Buenrostro activated his panic button." *Id.* at 11.

After Plaintiff and the other inmate were "placed in holding cages," he claims he was "refused medical attention for approximately 4 hours." *Id.* Plaintiff was "eventually seen by medical and negligently 'released' back to the yard." *Id.* While Plaintiff was in Ad-Seg he informed a "nurse passing by the cell" that he was "in pain and still bleeding from the wound" he had sustained the previous day. *Id.* at 11-12. Once the nurse "saw

the wound he immediately notified the "Dr. Lee[2] about the injury." *Id.* at 12. Plaintiff was "escorted to Dr. Lee's office" and Dr. Lee "immediately referred [Plaintiff] to the Central Treatment Center (prison hospital) for an x-ray." *Id.* Plaintiff was also prescribed antibiotics and pain medication. *See id.*

### D. Claims against Defendant Diaz

First, the Court notes that Plaintiff seeks to hold Defendant Diaz liable in his supervisory capacity. Specifically, Plaintiff seeks to hold Defendant Diaz, currently the Acting Secretary for the California Department of Corrections and Rehabilitation ("CDCR"), liable for a "hands off policy" that "allows for individual prison facilities to effectively retaliate against prisoners for filing complaints." *See* Compl. at 4. Plaintiff claims Diaz is "fostering rampant due process violations and incidences of cruel and unusual punishment due to reprisal." *Id.* at 4-5.

While as Acting Secretary for the CDCR, Diaz may be subject to suit under § 1983, Plaintiff fails to include "further factual enhancement" to describes when, how, or to what extent, Defendant Diaz personally caused him any injury. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557). Instead, Plaintiff broadly alleges that Diaz is aware that "prison facilities in California use retaliatory practices to 'chill' the legitimate complaints against prison administrations." Compl. at 5. However, there is no respondeat superior liability under 42 U.S.C. § 1983. *Palmer v. Sanderson*, 9 F.3d 1433, 1437-38 (9th Cir. 1993). "Because vicarious liability is inapplicable to ... § 1983 suits, [Plaintiff] must plead that each government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 at 676; *see also Jones v. Community Redevelopment Agency of City of Los Angeles*, 733 F.2d 646, 649 (9th Cir. 1984) (even pro se plaintiff must "allege with at least some degree of particularity overt acts which defendants engaged in" in order to state a claim).

---

[2] Neither "Dr. Lee" or the unnamed nurse are named defendants in this matter.

Therefore, because Plaintiff fails to state a claim upon which § 1983 relief can be granted as to Acting Secretary Diaz, he must be dismissed from this action.

E. <u>Eighth Amendment Failure to Protect</u>

Plaintiff alleges he was stabbed by another prisoner on June 7, 2018 and claims this prisoner told him that he was "paid in 'tobacco' to do it." Compl. at 4. Plaintiff claims that this assault was "orchestrated" by RJD "prison guards" as a result of his "complaints of unfair hiring practices within the [CDCR]." *Id.* Plaintiff also claims that he was "experiencing harassment from prison guards who were made aware of a 51 day hunger strike [he] conducted in 2006" which he claims lead to the investigation of then Warden Robert Hernandez. *Id.*

"[P]rison officials have a duty ... to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). "[A] prison official violates the Eighth Amendment when two requirements are met. First, the deprivation alleged must be, objectively, 'sufficiently serious'.... For a claim based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* at 834. Second, to violate the Cruel and Unusual Punishments Clause, Plaintiff must allege the prison official he seeks to hold liable had a "'sufficiently culpable state of mind' ... [T]hat state of mind is one of 'deliberate indifference' to inmate health or safety." *Id.* A prison official can be held liable only if she "knows of and disregards an excessive risk to inmate health and safety;" … she "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [s]he must also draw the inference." *Id.* at 837.

Plaintiff's allegation that he was stabbed by another inmate who informed him that he was "paid" to stab Plaintiff by unnamed correctional officers is a serious allegation. However, Plaintiff offers no specific factual allegations from which the Court could find that any of the named Defendants were aware of, or disregarded, a specific threat to Plaintiff's safety that resulted in the attack on June 7, 2018. Plaintiff claims that "between the dates of April 9, 2016 and August 20, 2018," he had "notified Daniel

10

3:19-cv-0510-CAB-MSB

Paramo ("Warden's office) of the 'reprisal and retaliation' I experienced by RJD employees." Compl. at 6. Plaintiff claims that Paramo "did not take any action to curb this harassment which quickly lead to a violent assault against me." *Id.* However, a review of the Complaint indicates that Plaintiff fails to offer any specific factual allegation to support his claim of "reprisal and retaliation" by RJD officials. He sets forth broad allegations of a pattern of conduct but provides no actual details of the alleged misconduct.

Plaintiff alleges that Defendants Orozco, Buenrostro, Lavios "knew that [Plaintiff] was assaulted with a weapon and is in further danger of being assaulted." Compl. at 11. As to each of these Defendants, Plaintiff alleges that they were aware that Plaintiff had been stabbed but there are no allegations that they *knew* Plaintiff was going to be attacked or should have known Plaintiff was going to be attacked. *See id.*

There are no factual allegations tying any of the named Defendants to the actions of the inmate who purportedly stabbed Plaintiff or that they were aware that this inmate was going to harm Plaintiff. *See Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986) (deliberate indifference requires showing of "more than a mere suspicion that an attack will occur."); *Hernandez v. Schriro*, 2011 WL 2910710, at *6 (D. Ariz. July 20, 2011) ("[w]hile theoretical risk is always possible, *Farmer* requires more—'conditions posing a substantial risk of serious harm.'") (citation omitted)). There are no allegations that the named Defendants knew of and disregarded "an excessive risk to inmate health and safety" or that they were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," and they actually drew that inference. *Farmer*, 511 U.S. at 837.

Accordingly, Plaintiff's Eighth Amendment failure to protect claims must be DISMISSED for failing to state a claim upon which § 1983 relief can be granted.

F. Eighth Amendment Excessive Force

Plaintiff alleges "Duran, Sigala, and Salas on Facility 'C' assaulted [him] in the sally port structure in building 15." *Compl.* at 8. Plaintiff offers no other factual

allegations with respect to this alleged assault and what injuries, if any, he suffered as a result of this alleged assault.

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. Amend. VIII. The "unnecessary and wanton infliction of pain" constitutes cruel and unusual punishment prohibited by the United States Constitution. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Neither accident nor negligence constitutes cruel and unusual punishment, as "[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." *Id*.

When prison guards stand accused of using excessive force in violation of the Eighth Amendment, "the core judicial inquiry is ... whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). The Court considers the following factors: (1) the need for application of force; (2) the relationship between the need and the amount of force used; (3) the extent of the injury inflicted; (4) the threat "reasonably perceived by the responsible officials"; and (5) "any efforts made to temper the severity of a forceful response." *Id*. (*citing Whitley*, 476 U.S. at 321). "From such considerations inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321.

Not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson,* 503 U.S. at 9. "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Ibid*. (some internal quotation marks omitted).

Plaintiff does not set forth sufficient factual allegations from which the Court could determine that any of the factors necessary to find an excessive force claim exist. The

bare allegation that he was "assaulted" by Defendant Duran, Sigala, and Salas, without any further elaboration, is simply not enough for the Court to find that Plaintiff has adequately stated an Eighth Amendment excessive force claim.

Accordingly, Plaintiff's Eighth Amendment excessive force claims must be DISMISSED for failing to state a claim upon which § 1983 relief can be granted.

G. Eighth Amendment Medical Care

Plaintiff alleges that after he was stabbed, he was "refused medical attention for approximately 4 hours." Compl. at 11. On June 8, 2018, while "in Ad-Seg," Plaintiff "notified medical (a nurse passing by the cell)" that he was "in pain and still bleeding from the wound" he suffered from as a result of the stabbing. *Id.* at 11-12. This nurse "immediately notified" a correctional officer about the injury and Plaintiff "was escorted" to be seen by a doctor who then "immediately" sent Plaintiff to the "prison hospital." *Id.* at 12. Plaintiff was also prescribed antibiotics and pain medication. *Id.*

To violate the Eighth Amendment however, Plaintiff must allege facts sufficient to show "the wanton and unnecessary infliction of pain." *Rhodes v. Chapman*, 475 U.S. 312, 347 (1981). "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." *Whitley*, 475 U.S. at 319. Thus, alleged deprivations under the Eighth Amendment "must involve more than ordinary lack of due care for the prisoner's interests or safety." *Id.* Mere negligence on the part of the prison official is not sufficient to establish liability— the official's conduct must have been wanton. *Farmer*, 511 U.S. at 834 (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)).

To meet this high standard, a prisoner alleging an Eighth Amendment violation must plead facts sufficient to "satisfy both the objective and subjective components of a two-part test." *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (citation omitted). While Plaintiff's allegations of having sustained a stabbing wound are generally sufficient to meet the Eighth Amendment's objective requirements, *see Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (a medical need is serious when the failure to treat it

could result in significant injury or the unnecessary and wanton infliction of pain), he must further allege facts sufficient to show that each individual person he seeks to sue "kn[e]w of and disregard[ed] an excessive risk to [his] health or safety." *Farmer,* 511 U.S. at 837; *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988) (liability may be imposed on individual defendant under § 1983 only if plaintiff can show that defendant proximately caused deprivation of federally protected right).

With respect to his medical needs, Plaintiff has failed to allege that any individual RJD correctional officer or nurse knew his injuries posed a substantial risk of serious harm, and yet deliberately disregarded that risk by failing to take reasonable steps to abate it. *Farmer*, 511 U.S. at 837. Plaintiff claims that medical care was denied for a period of four hours, *see* Compl. at 11, but delay by itself does not constitute deliberate indifference. *See Hallett*, 296 F.3d at 745-46 (to establish a claim of deliberate indifference arising from delay in providing care, a plaintiff must show that the delay was harmful).

Accordingly, Plaintiff's Eighth Amendment inadequate medical care claims are DISMISSED for failing to state a claim upon which relief may be granted.

H. Fourteenth Amendment Due Process

Plaintiff claims that RJD prison officials are "refusing" to process his administrative grievances. Compl. at 8. Plaintiff claims that the "RJD Appeals Office routinely issues Plaintiff a 'memorandum' on a monthly basis citing that the appeal is being delayed due to the 'complexity of the decision, action, or policy." *Id.*

A prison official's allegedly improper processing of an inmate's grievances or appeals, without more, cannot serve as a basis for section 1983 liability. *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (prisoners do not have a "separate constitutional entitlement to a specific prison grievance procedure.") (citation omitted); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) (due process not violated simply because defendant fails properly to process grievances submitted for consideration); *see also Todd v. California Department of Corrections and Rehabilitation*, 615 Fed. Appx.

415, 415 (9th Cir. 2015) (district court properly dismissed claim based on improper "processing and handling of […] prison grievances," since prisoners have no "constitutional entitlement to a specific prison grievance procedure") (citing *Ramirez*, 334 F.3d at 860) (quotation marks omitted).

Accordingly, Plaintiff's Fourteenth Amendment due process claims are DISMISSED for failing to state a claim upon which relief may be granted.

For all these reasons, the Court finds Plaintiff's Complaint fails to allege any plausible claim for relief, and therefore, it must be dismissed in its entirety pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1). *See Lopez,* 203 F.3d at 1126-27; *Rhodes,* 621 F.3d at 1004.

**IV. Conclusion and Orders**

For the reasons discussed, the Court:

1. **DENIES** Plaintiff's Motion to Appoint Counsel (Doc. No. 3) without prejudice.

2. **GRANTS** Plaintiff's Motion to Proceed IFP pursuant to 28 U.S.C. § 1915(a) (Doc. No. 2).

3. **DIRECTS** the Acting Secretary of the CDCR, or his designee, to collect from Plaintiff's prison trust account the $350 filing fee owed in this case by garnishing monthly payments from his account in an amount equal to twenty percent (20%) of the preceding month's income and forwarding those payments to the Clerk of the Court each time the amount in the account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2). PAYMENTS SHALL BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER ASSIGNED TO THIS ACTION.

4. **DIRECTS** the Clerk of the Court to serve a copy of this Order on Ralph Diaz, Acting Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001.

5. **DISMISSES** Plaintiff's Complaint in its entirety for failing to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1).

6. **GRANTS** Plaintiff forty-five (45) days leave from the date of this Order in which to file an Amended Complaint which cures the deficiencies of pleading noted. Plaintiff's Amended Complaint must be complete by itself without reference to his original pleading. Defendants not named and any claim not re-alleged in his Amended Complaint will be considered waived. *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.").

If Plaintiff fails to file an Amended Complaint within the time provided, the Court will enter a final Order dismissing this civil action based both on Plaintiff's failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), and his failure to prosecute in compliance with a court order requiring amendment. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

7. The Clerk of Court is directed to mail a form civil rights complaint to Plaintiff for his use in amending.

**IT IS SO ORDERED**.

Dated: May 9, 2019

Hon. Cathy Ann Bencivengo
United States District Judge